```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION
```

| | |
|---|---|
| **NATALIE ANN ANDRYCHOWSKI,** | |
| Plaintiff, | |
| | Case No. 11 C 0574 |
| v. | |
| **MICHAEL J. ASTRUE,** | Hon. Harry D. Leinenweber |
| Commissioner of Social Security, | |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Natalie Andrychowski asks this Court to reverse or remand the Commissioner of Social Security's conclusion that she is not disabled. For the reasons that follow, the Court will remand the matter back to the Social Security Administration for further consideration.

### I. STATEMENT OF FACTS

Before she had children, Natalie Andrychowski ("Andrychowski") worked as a phlebotomist, supervisor, and medical office assistant. She left work when her daughter was born, and then injured her back in November 2001 while lifting the baby. Since then, she has been diagnosed and/or treated for: hypothyroidism, fibromyalgia, pain-related insomnia and associated daytime fatigue, irritable bowel syndrome, spastic bladder syndrome, lumbar radiculopathy (nerve malfunction related to multiple herniated discs), degenerative disc

disease, and sacroiliitis (inflammation of the sacroiliac joints, which connect the lower spine and pelvis). The last date on which she was insured for disability (her "DLI") was December 31, 2006; thus, the question here is whether she was legally disabled on or before that date.

The Court summarizes Andrychowski's treatment history only briefly. She had corrective back surgery following her 2001 injury. However, she reports only incomplete relief, testifying that she still suffered "lots of tightness, lots of achiness" and could not function well. In 2005, she re-herniated the same area of her lower back and began seeing Dr. Lawrence Wilkin ("Wilkin"), a neurologist. She had a second back surgery in August 2005, and showed some improvement. Shortly thereafter, though, she began a course of sacroiliac joint injections to treat her continuing lower back pain; the injections continued until May 2006.

In his August 2006 and November 2006 reports, Dr. Wilkin diagnosed Andrychowski with fibromyalgia and most of the other ailments listed above. Since his treatment began, Wilkin has prescribed Plaintiff a variety of medications, including narcotic painkillers.

Andrychowski filed for Social Security disability benefits on October 17, 2006 claiming an onset date of November 1, 2001. On December 12, Illinois Department of Human Services consultant Dr. Lynnelle Flores ("Flores") examined Plaintiff. She found that Plaintiff suffered from chronic hip and low back pain (likely due

to degenerative disc disease), fibromyalgia, depression, and hypothyroidism.  Flores did not discuss any possible work limitations.

Based largely on Flores' report, however, non-examining consultant Dr. Charles Kenny ("Kenny") concluded in January 2007 that Plaintiff could perform light work on or before her DLI. Plaintiff's benefit claim was denied initially and after reconsideration.  She requested an administrative hearing on May 29, 2007 and received one on January 28, 2009.

In March 2008, Dr. Wilkin wrote a letter explaining Plaintiff's symptoms and opining that due to their severity she had been disabled from all gainful employment since he first treated her in 2005.  He noted that she could not sit for more than twenty to thirty minutes at a stretch (or two total hours per workday), required a five to ten minute rest break per hour, and would unpredictably miss four to six work days per month.  A questionnaire accompanying this letter asked the earliest date that the described symptoms and limitations applied; he filled in September 9, 2001 (four years before he began treating her and two months before her self-reported onset date).

On February 6, 2009 Administrative Law Judge John Kraybill ("ALJ Kraybill" or the "ALJ") ruled that Andrychowski was not disabled because she could still perform her prior work as a medical office assistant if she had the option to sit or stand as needed.  He discussed evidence from four doctors:  Dr. Wilkin, Dr.

to degenerative disc disease), fibromyalgia, depression, and hypothyroidism.  Flores did not discuss any possible work limitations.

Based largely on Flores' report, however, non-examining consultant Dr. Charles Kenny ("Kenny") concluded in January 2007 that Plaintiff could perform light work on or before her DLI. Plaintiff's benefit claim was denied initially and after reconsideration.  She requested an administrative hearing on May 29, 2007 and received one on January 28, 2009.

In March 2008, Dr. Wilkin wrote a letter explaining Plaintiff's symptoms and opining that due to their severity she had been disabled from all gainful employment since he first treated her in 2005.  He noted that she could not sit for more than twenty to thirty minutes at a stretch (or two total hours per workday), required a five to ten minute rest break per hour, and would unpredictably miss four to six work days per month.  A questionnaire accompanying this letter asked the earliest date that the described symptoms and limitations applied; he filled in September 9, 2001 (four years before he began treating her and two months before her self-reported onset date).

On February 6, 2009 Administrative Law Judge John Kraybill ("ALJ Kraybill" or the "ALJ") ruled that Andrychowski was not disabled because she could still perform her prior work as a medical office assistant if she had the option to sit or stand as needed.  He discussed evidence from four doctors:  Dr. Wilkin, Dr.

Flores, Dr. Stevens (a non-treating, non-examining medical expert), and Dr. Chaudhary (who completed an assessment of Plaintiff in 2008).

ALJ Kraybill did not discuss the records of Dr. Kenney; Dr. Nayak (a rheumatologist who examined Plaintiff in early 2005); Drs. Montella and Kuesis (orthopedic surgeons who saw her in 2004); Dr. Stadlan (the neurosurgeon who performed her second back surgery); Dr. Yourek (a psychiatrist who examined her in 2008); or Dr. Mangurten (who treated Plaintiff beginning in 2000 but whose records are largely unintelligible). The ALJ was familiar with some of these records, however, as they featured in the hearing testimony and questioning.

On December 3, 2010 the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Social Security Commissioner's final word. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011).

## II. <u>LEGAL STANDARD</u>

The ALJ had to determine whether one or more determinable mental or physical impairments (that can be expected to last for 12 or more months) prevented Plaintiff from engaging in substantial gainful activity. To do so, he followed the five-step analysis in 20 C.F.R. § 404.1520(a)(4). If a claimant is found "not disabled" at any step, the inquiry ends and the claim is denied.

- At step one, a claimant is not disabled if she is currently performing substantial gainful activity.

- At step two, a claimant is not disabled unless she has a "severe" medical impairment.

- At step three, a claimant *is* disabled if her impairments meet or equal the listings at 20 C.F.R. Part 404, Subpart P, App. 1. If they do not, the analysis continues.

- Before step four, the ALJ determines a claimant's Residual Functional Capacity ("RFC"); that is, what work she can do despite her limits. 20 C.F.R. § 404.1545(a). At this stage, the ALJ considers all record evidence and all of the claimant's impairments, severe or not. *Id.*

- At step four, a claimant is not disabled if she has the RFC to perform her past work.

- At step five, a claimant is not disabled if she can do any work in the national economy based on her RFC, age, education, work experience. See 20 C.F.R. § 404.1512(g).

An ALJ must consider all relevant evidence and may not "cherry-pick" only facts that indicate non-disability; however, he need not discuss every piece of evidence. *Goble v. Astrue*, 385 Fed.Appx. 588, 593 (7th Cir. 2010). That is, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *McKinzey,* 641 F.3d at 889.

A treating physician's opinion is entitled to controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). If an ALJ discounts a treating physician's opinion, he must offer good reasons why and specify how much weight he gives it in light of certain factors. *Id*. at 306, 308. Those

factors include "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Id.* at 308. *See also,* 20 C.F.R. § 404.1527(d)(2).

On review, an ALJ's decision controls if it applies the correct legal standard and is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Campbell*, 627 F.3d at 306. The Court critically reviews the evidence, but does not reweigh it, resolve conflicts, or substitute its own judgment for the Commissioner's. *McKinzey*, 641 F.3d at 889. Because the Court reviews only a cold record, an ALJ's credibility findings receive special deference. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). However, mere boilerplate determinations cannot suffice. *Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011). Finally, review is limited to the ALJ opinion's stated rationale. *Campbell*, 627 F.3d at 306.

### III. <u>DISCUSSION</u>

At step one of his decision, ALJ Kraybill concluded that Andrychowski did not engage in any substantial gainful activity between November 1, 2001 and December 31, 2006. At step two, he found three severe impairments: degenerative disc disease of the lumbar spine, sacroiliitis, and fibromyalgia. He noted that these conditions cause "more than minimal limitations" on her ability to

work.  He then concluded that her impairments did not meet or equal a listed impairment, and proceeded to determine her RFC.

The ALJ adopted Dr. Stevens' RFC, which he claimed took into consideration Plaintiff's symptoms insofar as they could "reasonably be accepted as consistent with the objective medical evidence and other evidence."  Thus, the ALJ determined that Plaintiff could "perform sedentary work as defined in 20 CFR 404.1567(a) with a sit/stand option; occasional climbing of ramps and stairs, balancing, healing, crouching, and crawling; no climbing ladders, ropes or scaffolds; working around dangerous machinery or unprotected heights for commercial driving."

To reach that determination, the ALJ purported to follow a two-step process:  first considering whether the impairments shown by medically acceptable evidence could reasonably produce Plaintiff's reported symptoms, and then determining the symptoms' persistence, intensity, and limiting effects.  That second inquiry required him to evaluate the Plaintiff's credibility.  After summarizing her testimony, the ALJ concluded that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment."  The ALJ also discounted the opinion of Plaintiff's treating physician, Dr.

Wilkin, as inconsistent "with the objective medical evidence, prior to the [DLI], including his own treatment notes."

Plaintiff attacks the ruling on two points: first, that the ALJ failed to evaluate properly the Plaintiff's credibility, and second, that he failed to follow the regulations that govern how ALJ's weigh medical opinions. The Court considers each issue in turn.

### A. Adverse Credibility Finding

The vocational expert testified that a person with the above RFC could resume work as a medical assistant. He also conceded, however, that if that person either missed work more than two days per month or had to rest for 30 minutes after 90 minutes of activity, they would not be employable. Those conditions generally mirror Plaintiff's account of her illness on or before December 31, 2006. (Though she was not working at the time, she testified that her husband had to stay home from work two to three times per month because she could not care for their children on "bad days"; presumably, she would not have gone to work on those days.) Because the ALJ ultimately adopted Stevens' RFC, his negative credibility finding was clearly decisive. *See McKinzey*, 641 F.3d at 890. Thus, if that finding is insupportable, this Court must remand this case for further consideration.

The ALJ's boilerplate credibility finding is troubling because the RFC is supposed to be based on a credibility determination, not the other way around; such circular logic precludes meaningful

review. *See Benford v. Astrue*, No. 11 C 4, 2011 WL 4396921, at *5 (N.D.Ill. Sept. 20, 2011). Indeed, several district courts have rejected this exact language when unaccompanied by a more detailed discussion of which claims are credible and supported, which are not, and why. *See, e.g., Wragg v. Astrue*, No. 10 CV 0049, 2011 WL 4349497, at *3 (S.D. Ind. Sept. 15, 2011)(rejecting identical language offered without additional explanation or discussion).

In defending the ALJ's decision, the Government reiterates his summary of Plaintiff's testimony, supplementing it with record references that the ALJ himself never mentioned. If the ALJ did not rely on particular information, neither can this Court. *Campbell*, 627 F.3d at 306. However, the Government also seems to contend that that summary paragraph in fact constitutes the ALJ's credibility evaluation. That the ALJ's summary downplays the severity of Plaintiff's complaints and may be consistent with his skepticism, but a minimizing tone does not constitute a discussion of her credibility.

The ALJ's only sentence which appears to impugn Plaintiff's credibility is his parenthetical note that Plaintiff testified that she could sit for only three to five minutes in 2006 (and still followed that "guideline"), but sat for roughly 30 minutes before asking to stand at the hearing. (Interestingly, sitting for 20 to 30 minutes was entirely consistent with Dr. Wilkin's assessment.) However, this Court concludes that such a parenthetical (to which

the ALJ did not even refer in discrediting Plaintiff) is insufficient to support the boilerplate conclusion.

In defending the ALJ's perfunctory analysis by likening it to the section of the opinion laying out the applicable law, the Government misses the point. While it is sensible for an ALJ to use stock language to explain the adjudication process and governing law, the Seventh Circuit is clear that credibility determinations must be sufficiently individualized and substantive to allow for effective review. *See Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011). Accordingly, this Court remands this decision to the Agency for further consideration, and directs the ALJ to set forth a fleshed-out credibility determination specific to Plaintiff. *See Martinez v. Astrue*, No. 10 CV 370, 2011 WL 4834252 at *10 (N.D. Ind. Oct. 11, 2011).

### B. Evaluation of Medical Opinions

Plaintiff also challenges the ALJ's limited discussion of what weight certain medical opinions received. The Court agrees that on remand, the ALJ should address these opinions in accordance with the regulations.

#### *1. Dr. Flores*

As noted above, Dr. Flores examined Plaintiff on behalf of the Illinois Department of Human Services. ALJ Kraybill took note of the exam and referred to some of the findings, including Plaintiff's complaints of pain and fatigue and her ability to walk 50 feet, sit, and stand without difficulty. He did not discuss

Flores' findings of fibromyalgia, depression, and that Plaintiff's chronic hip and back pain was likely due to degenerative disc disease.

When considering evidence from a state agency physician, an ALJ must "not ignore these opinions and must explain the weight given to the opinions in their decisions." *McKinzey,* 641 F.3d at 891 (citing S.S.R. 96-6p; 20 C.F.R. § 404.1527). The ALJ did not totally ignore Dr. Flores' examination, but neglected to explain what weight, if any, he gave her assessment. For that reason, on remand the ALJ is directed to provide the discussion required by 20 C.F.R. § 404.1527(d) with regard to Dr. Flores.

### 2. Dr. Stevens

On the subject of medical experts, the ALJ also offered only the briefest account of why he credited the opinion of non-examining Dr. Stevens so heavily. The ALJ stated merely that Stevens' opinion was "consistent with the objective evidence that existed before the [DLI], and he is familiar with a disability program." Given that the ALJ not only afforded Stevens' views greater weight than those of any treating or examining doctor, but adopted them entirely, the ALJ is encouraged on remand to provide a more thorough discussion of his reasoning to ensure an adequate record for review. *Cf.* 20 C.F.R. §404.1527(f).

### 3. Dr. Wilkin

As noted above, and ALJ is to give a treating physician's opinion conclusive weight unless he finds that it is insufficiently

supported. *See* 20 C.F.R. § 404.1527(d). If he does not give it conclusive weight, an ALJ must decide how much weight to give it based on the following factors: the length and extent of the treatment relationship, the frequency of examination, the physician's specialty, any tests performed, and the opinion's consistency and support in the record. Here, the ALJ gave "reduced" weight to Dr. Wilkin's opinion, but did not specify what that reduction entailed.

The ALJ described Wilkin's opinion as inconsistent "with the objective medical evidence, prior to the [DLI], including his own treatment notes." He specifically objected that: (1) Wilkin's letter inadequately distinguished Plaintiff's current condition from her state on or before her DLI; (2) Wilkin wrote on Plaintiff's counsel's questionnaire that she was disabled starting September 9, 2001 (which predates both their treatment relationship and her self-reported onset date); and (3) the absence of fibromyalgia from Wilkin's October 13, 2005 treatment notes was inconsistent with his later assessment for Plaintiff's counsel. (It is unclear whether the ALJ found the contradiction in the dates of diagnosis or in the timing of Plaintiff's reporting symptoms consistent with fibromyalgia.)

It does appear that the ALJ considered at least some of the § 404.1527 factors in weighing Wilkin's opinion. The ALJ stated that Wilkin had treated Plaintiff since 2005, but did not appear to believe that the 18-month treatment relationship prior to

Plaintiff's DLI weighed in favor of crediting Wilkin's opinion. The ALJ also noted that some of Dr. Wilkin's tests predated Plaintiff's second surgery, but it is not clear how much weight he gave to this objection. The ALJ did not address Dr. Wilkin's specialty (neurology), or how often he treated Andrychowski (at least 10 times prior to her DLI).

Although the ALJ hardly undertook an exhaustive discussion of this checklist of factors, this Court concludes that reasonable minds could differ as to how much weight Wilkin's opinion should have received. Because the ALJ built at least a shaky bridge from the evidence to his conclusion, this Court will not remand on these grounds. Even so, however, it strongly encourages the ALJ to offer a more precise accounting for the weight he accords Dr. Wilkin's opinions. Furthermore, the ALJ may find it useful to solicit a more temporally precise opinion from Dr. Wilkin on remand, rather than simply discrediting his opinion on those grounds.

## IV. CONCLUSION

For the reasons stated herein, the Court remands this matter to the Social Security Administration for further consideration. **IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 12/1/2011